Slip. Op. 17-159

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HAIXING JINGMEI CHEMICAL PRODUCTS SALES CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES <br><br> Defendant, <br><br> and <br><br> ARCH CHEMICALS, INC., <br><br> Defendant-Intervenor. | Before: Mark A. Barnett, Judge <br><br> Court No. 16-00259 <br><br> **PUBLIC VERSION** |

## OPINION AND ORDER

[Plaintiff's request for remand is granted for redetermination by the Department of Commerce whether Plaintiff's sales subject to the new shipper review were *bona fide*.]

Dated: December 5, 2017

Gregory S. Menegaz, deKieffer & Horgan, PPLC, of Washington, DC, argued for Plaintiff. With him on the brief were J. Kevin Horgan and Alexandra H. Salzman.

Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant. With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Jessica DiPietro, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Peggy A. Clarke, Law Offices of Peggy A. Clarke, of Washington, DC, argued for Defendant-Intervenor.

Barnett, Judge: Plaintiff, Haixing Jingmei Chemical Products Sales Co., Ltd. ("Plaintiff" or "Jingmei") challenges aspects of the Department of Commerce's ("Commerce" or "the agency") final determination in the 2014-2015 antidumping new shipper review of calcium hypochlorite from the People's Republic of China ("PRC").[1] *See Calcium Hypochlorite from the People's Republic of China*, 81 Fed. Reg. 83,804 (Dep't Commerce Nov. 22, 2016) (final decision to rescind the new shipper review of Haixing Jingmei Chemical Products Sales Co., Ltd.; 2014-2015) ("*Final Rescission*"), CJA 1, PJA 1, PR 120, ECF No. 36; and the accompanying Issues and Decision Mem., A-570-008 (Nov. 14, 2016) ("I&D Mem."), CJA 2, PJA 2, PR 117, ECF No. 36. Defendant United States ("the Government") and Defendant-Intervenor Arch Chemicals, Inc. ("Arch Chemicals") filed responses in opposition, to which Plaintiff filed a reply. Confidential Def.'s Mem. in Opp'n to Pl.'s Mot. for J. upon the Agency R. ("Def.'s Opp'n"), ECF No. 31; Confidential Def.-Int. Arch Chemicals, Inc. Br. in Resp. to Pl.'s Mot. for J. on the Agency R. ("Def.-Int's Opp'n."), ECF No. 29; Reply Br. of Pl. Haixing Jingmei Chemical Products Sales Co., Ltd ("Pl.'s Reply Br."), ECF No. 35. No party requested oral argument. The court, *sua sponte*, held a telephone conference with counsel for Plaintiff, the Government, and Arch Chemicals on November 8, 2017. ECF No. 39. The matter is now ready for decision.

---

[1] The administrative record for this case is divided into a Public Administrative Record ("PR"), ECF No. 18-3, and a Confidential Administrative Record ("CR"), ECF No. 18-2. Parties further submitted joint appendices containing record documents cited in their briefs. *See* Public Joint Appendix ("PJA"), ECF No. 37; Confidential Joint Appendix ("CJA"), ECF No. 36. The court provides PR, CR, and PJA numbers where available, but references the confidential versions of the relevant record documents throughout this opinion, unless otherwise specified.

I.   **Background**

In January 2015, Commerce issued an antidumping duty order on calcium hypochlorite from the PRC. *Calcium Hypochlorite from the People's Republic of China*, 80 Fed. Reg. 5,085 (Dep't Commerce Jan. 30, 2015) (antidumping duty order) ("*ADD Order*").[2]  In July 2015, Plaintiff and its affiliated producer, Haixing Eno Chemical Co., Ltd. ("Eno") filed a request for a new shipper review and identified two sales that would be subject to their review request.  *See* Entry of Appearance and Corrected Request for New Shipper Review (July 20, 2015) ("NSR Request") at 2 and Ex. 2, CJA 5, CR 2, PJA 5, PR 2, ECF No. 36.  In response, Commerce initiated the new shipper review on August 26, 2015 for the period of review ("POR") July 25, 2014 through June 30, 2015. *Calcium Hypochlorite from the People's Republic of China*, 80 Fed. Reg. 51,774 (Dep't Commerce Aug. 26, 2015) (initiation of antidumping duty new shipper review; 2014–2015) ("*Initiation Notice*"), CJA 8, PJA 8, PR 8, ECF No. 36.

Upon initiating the review, Commerce issued a standard new shipper review questionnaire to Plaintiff.  *See* Dep't Commerce Initial Questionnaire ("IQ"), CJA 9, PJA 9, PR 9, ECF No. 36.  In Appendix IX of the questionnaire, Commerce requested information specific to the importer of the subject merchandise,[3] including the importer's

---

[2] The scope of the order covers "calcium hypochlorite, regardless of form (e.g., powder, tablet (compressed), crystalline (granular), or in liquid solution), whether or not blended with other materials, containing at least 10 percent available chlorine measured by actual weight," and also "includes bleaching powder and hemibasic calcium hypochlorite."  *ADD Order*, 80 Fed. Reg. 5,085.  Commerce established a PRC-wide entity weighted average antidumping duty margin of 210.52 percent.  *Id*. at 5,086.

[3] The sales under review involved Eno and Jingmei as producer and seller, respectively; [[                    ]], a Hong Kong based wholesaler of swimming pool supplies, denoted here for confidentiality purposes as Company X; and [[            ]], a U.S. customer, denoted here for confidentiality purposes as Company Y.  *See* Jingmei's Section C Questionnaire Response (Oct. 16, 2015) at C-1, CJA 11, CR 10-23,

history, organization, ownership, and affiliations; sales during the POR; other purchases of subject merchandise; and resale of the subject merchandise. IQ, App. IX. The questionnaire directed either Plaintiff or, if Plaintiff was unable, Company X to answer the questions and incorporate the answers in Plaintiff's response. *Id.* at 1. In responding to a question soliciting the identity of other companies from which it purchased the subject merchandise during or subsequent to the POR, and the quantity, value and date of each purchase, Company X asserted that it considers such information "to be highly confidential and sensitive." SAQR at 26. Rather than provide such information, Company X stated that it "confirmed that the prices as from Jingmei were within the normal range of [its] prices from other suppliers." *Id.*

Commerce issued a supplemental questionnaire to Company X requesting the same and additional information, but Company X again refused to respond due to the confidentiality of the information. Jingmei's Suppl. Section A Questionnaire Resp. (Dec. 28, 2015) ("Suppl. SAQR") at 21, CJA 13, CR 37-40, PJA 13, PR 38, ECF No. 36. Commerce also issued Appendix IX to Company Y, but did not receive a complete response. Memorandum from Kabir Archuletta, Senior Int'l Trade Analyst, to James C. Doyle, Director, titled *Bona Fide Nature of the Sales in the Antidumping Duty New Shipper Review of Calcium Hypochlorite from the People's Republic of China: Haixing Jingmei Chemical Products Sales Co., Ltd.* (June 20, 2016) ("*Bona Fide* Mem.") at 4-5, CJA 3, CR 63, PJA 3, PR 102, ECF No. 36. Specifically, Company Y withheld the identity of its downstream U.S. customers and specific details and documentation

---

PJA 11, ECF No. 36; Jingmei's Section A and App. IX Resp. (Sep. 16, 2016) ("SAQR") at 23-24, CJA 10, CR 6-8, PJA 10, PR 14-15, ECF No. 36.

regarding any purchases of subject merchandise from Company X subsequent to the POR, asserting that it considers the requested information to be "highly confidential." Jingmei's Customer's Suppl. Questionnaire Resp. (Dec. 28, 2015) at 3, 6, CJA 14, CR 41, PJA 14, PR 39, ECF No. 36.

 Commerce informed Plaintiff in a supplemental questionnaire that the information requested from Company X and Company Y is necessary for Commerce's analysis in the new shipper review.  Dep't Commerce Suppl. Section A, C, and Customer Questionnaire (Mar. 28, 2016) at 6, CJA 16, CR 50, PJA 16, PR 84, ECF No. 36.  It advised Plaintiff that if Commerce "do[es] not receive complete responses to [its] requests for information or [it] determine[s] that [Plaintiff's] efforts to obtain the information [were] not sufficient [it] may use adverse facts available."  *Id.*  Moreover, in supplemental questionnaires to Company X and Company Y, Commerce advised the companies that their proprietary information would be protected by an administrative protective order, and that the companies' continued failure to provide the requested information may affect Commerce's determination as to the *bona fide* nature of Plaintiff's sales under review.  *Id.* at 7, 9.  Following the companies' deficient responses, Commerce asked Plaintiff to describe its efforts to ensure full cooperation from Company X and Company Y, to which Plaintiff responded that it had undertaken its best efforts to ensure full cooperation, "but because these downstream customers are not affiliated with Jingmei, Jingmei has no control over them."  Jingmei Suppl. Questionnaire Response (April 20, 2016) at 1, CJA 19, CR 60, PJA 19, PR 94, ECF No. 36-1.  Plaintiff produced e-mail communication documenting its efforts to encourage Company X to provide the requested information; however, its efforts were futile

because Company X responded by stating: "Our accounting ledgers contain other financial information not relevant to those two purchases. We will not give this kind of information to anybody, not even to the lawyers or [Commerce]."  *Id.*, Ex. SQ8-1

On June 27, 2016, Commerce preliminarily rescinded the new shipper review based on its determination that it lacked sufficient information to conduct the *bona fide* analysis of Jingmei's new shipper sales.  *Calcium Hypochlorite from the People's Republic of China*, 81 Fed. Reg. 41,522 (Dep't Commerce June 27, 2016) (prelim. intent to rescind the new shipper review of Haixing Jingmei Chemical Products Sales Co., Ltd.), CJA 22, PJA 22, PR 104, ECF No. 36-1 ("*Preliminary Rescission*"), and accompanying Prelim. Decision Mem., A-570-008 (June 20, 2016), CJA 21, PJA 21, PR 101, ECF No. 36-1.[4]  Information and documentation Commerce deemed necessary but missing included accounting documentation from Company X and Company Y to substantiate the information reported by Jingmei.  *Bona Fide* Mem. at 5-8.

Following briefing by Plaintiff and Arch Chemicals, Commerce adopted its preliminary findings without change.  *Final Rescission*, 81 Fed. Reg. at 83,805 ("Based on [Commerce's] complete analysis of all of the information and comments on the record of this review, we make no changes to the *Preliminary Rescission*.").  Commerce concluded that it could not substantiate the price of the sales, which parties incurred expenses and antidumping duties, whether the subject merchandise was sold at a profit, and whether the sales were typical.  I&D Mem. at 6-10.  Commerce did not find that the sales under review were not *bona fide*.  *See id.* at 6-10, 13.  Citing to Company

---

[4] Because the relevant transactions involved business proprietary information, Commerce provided a full discussion of its preliminary findings in a separate memorandum.  Prelim. Decision Mem. at 4; *see also Bona Fide* Mem.

X and Company Y's "partial responses to a number of our requests for information" and "explicit[] refus[al] to tie any of the reported expenses to their financial records," Commerce explained that there was insufficient information to conduct the *bona fide* analysis of Jingmei's sales during the POR, and thus rescinded the review. *Id.* at 10. Commerce did not use facts available, with or without an adverse inference, in rescinding the review. *Id.* at 9, 13.

Jingmei challenges Commerce's *Final Rescission*, arguing that it provided the information necessary for Commerce to perform the *bona fide* analysis and that Commerce did not need accounting records from Company X and Company Y. Pl. Haixing Jingmei Chemical Products Sales Co., Ltd Mot. for J. on the Agency R., ECF No. 22; Pl. Haixing Jingmei Chemical Products Sales Co., Ltd Mem. in Supp. of Mot. for J. on the Agency R. ("Pl.'s Br.") at 13-22. Jingmei additionally argues that it sold the subject merchandise at a profit and that it should not be penalized for the failure of its unaffiliated customer (Company X) or the customer's customer (Company Y) to cooperate with Commerce's information requests. Pl.'s Br. at 22-32.

## II.   Jurisdiction & Standard of Review

The court has jurisdiction pursuant to § 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[5] and 28 U.S.C. § 1581(c) (2012). The court will uphold an agency's determination that is supported by substantial evidence on the record and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is 'such relevant evidence as a reasonable

---

[5] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2012 edition, and all references to the United States Code and the Code of Federal Regulations are to the 2012 edition, unless otherwise stated.

mind might accept as adequate to support a conclusion.'" *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It "requires more than a mere scintilla," but "less than the weight of the evidence." *Nucor Corp. v. United States*, 34 CIT 70, 72, 675 F. Supp. 2d 1340, 1345 (2010) (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004)).

In determining whether substantial evidence supports Commerce's determination, the court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). However, that a plaintiff can point to evidence that detracts from the agency's conclusion or that there is a possibility of drawing two inconsistent conclusions from the evidence does not preclude the agency's finding from being supported by substantial evidence. *Matsushita Elec. Indus. Co. v. United States,* 750 F.2d 927, 933 (Fed. Cir. 1984) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966)). The court may not "reweigh the evidence or . . . reconsider questions of fact anew." *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1377 (Fed. Cir. 2015) (quoting *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 815 (Fed. Cir. 1992)); *see also Usinor v. United States*, 28 CIT 1107, 1111, 342 F. Supp. 2d 1267, 1272 (2004) (citation omitted) (the court "may not reweigh the evidence or substitute its own judgment for that of the agency").

### III.   Analysis

Jingmei's primary challenge to Commerce's *Final Rescission* is to Commerce's conclusion that it did not have sufficient evidence to determine whether Jingmei's POR sales were *bona fide*.  Jingmei asserts that finding was unsupported by substantial evidence and not in accordance with law.  *See* Pl.'s Br. at 1, 11-22; Pl.'s Reply Br. at 3-11.  Commerce's specific finding was: "we have determined to rescind this [new shipper review] with respect to Jingmei" because "we requested but were not provided sufficient information to conduct a *bona fide* analysis as required by the statute, and accordingly cannot determine whether the new shipper sales of Jingmei are *bona fide.*"  *Final Rescission*, 81 Fed. Reg. at 83,805.  Thus, the question posed by Jingmei's challenge is whether substantial evidence supports the agency's determination to rescind the new shipper review because the agency lacked sufficient information to conduct the *bona fide* analysis.  The court must conclude that the agency's decision is unsupported by substantial evidence and remands for a redetermination by the agency.

Pursuant to 19 U.S.C. § 1675(a)(2)(B)(i), if Commerce receives a request from a new exporter or producer who did not export merchandise subject to an antidumping duty order to the United States during the period of investigation, and it is not affiliated with any exporter or producer that did export, Commerce must conduct a review to establish an individual weighted-average dumping margin for that exporter or producer.  The provisions relating to new shipper reviews, 19 U.S.C. § 1675(a)(2)(B), were newly added to the Tariff Act of 1930 by the Uruguay Round Agreements Act ("URAA").  *See* URAA, Pub. L. No. 103-465, § 220, 108 Stat. 4809 (1904).  These provisions are the result of an attempt, during the Uruguay Round negotiations, to exempt new shippers

from countrywide duty liability by requiring a new antidumping investigation along with a separate finding of injury for each new shipper.  URAA, Statement of Administrative Action, H.R. Doc. No. 103-316, vol.1 at 875 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4203 ("SAA").[6]  Instead, "[t]he United States agreed . . . to provide new shippers with an expedited review that will establish individual dumping margins for such firms on the basis of their own sales." *Id*.

Initially, the statute permitted an importer to post a bond, in lieu of cash deposits, to serve as security for the future payment of antidumping duties until the completion of the new shipper review.  *See* 19 U.S.C. § 1675(a)(2)(B)(iii) (2006) (suspended during the period April 1, 2006 through June 30, 2009 by Pension Protection Act of 2006, Pub. L. No. 109–280, § 1632(a), 120 Stat. 780, 1165 (2006)).  Due to concerns about abuse of this bonding privilege,[7] Commerce developed a *bona fide* test to analyze new shipper

---

[6] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

[7] For example, one method of abuse by exporters subject to high antidumping duty rates was to "enter into a scheme to structure a few sales to show little or no dumping" and obtain an expedited new shipper review.  H.R. Rep. No. 114-114, pt. 1, at 89 (2015).  The atypical sales resulted in a zero or low antidumping duty rate.  This allowed the importer to bring large quantities of the subject merchandise into the United States at "highly dumped . . . prices but with little or no cash deposit."  *Id*.  By the time Commerce conducted an annual review of those subsequent sales and assigned the final duty rate, the importer could disappear or become nonresponsive, leaving Customs and Border Protection unable to collect the duties.  *Id*.  While this example was discussed in a May 2015 Report of the House Committee on Ways and Means, a May 2008 report by the U.S. Government Accountability Office estimated that abuse of the new shipper bonding privilege was responsible for about 40 percent of the uncollected antidumping or countervailing duties from fiscal years 2001 to 2007.  U.S. Gov't Accountability Off., GAO-08-391, Antidumping and Countervailing Duties: Congress and Agencies Should Take Additional Steps to Reduce Substantial Shortfalls in Duty Collection 14, 25 (2008); *see also* Pension Protection Act § 1632(a),(b)(2)(a) (suspending the bonding privilege during the period April 1, 2006 through June 30, 2009

review sales and ensure that the sales under review were representative of the shipper's future commercial practices.[8]  *See e.g.*, H.R. Rep. No. 114-114, pt. 1 at 89 (addressing areas of abuse in new shipper reviews and discussing Commerce's practice of applying a *bona fide* test for new shipper review sales); *Hebei New Donghua Amino Acid*, 29 CIT at 609, 374 F. Supp. 2d at 1338 (citation omitted) (upholding Commerce's *bona fide* sales test as within its statutory authority to ensure that the antidumping calculation in a new shipper review is based on realistic figures and not on sales that are atypical "of normal commercial transactions in the industry"); *see also Hebei New Donghua Amino Acid*, 29 CIT at 613, 374 F. Supp. 2d at 1341-42 (stating that without the *bona fide* factors "a firm intent on unfair competition would be free to manipulate the antidumping duty regime by selling at a price between normal value and the export prices of other subject firms and then lowering its price after obtaining an advantageous cash deposit rate.").

In an effort to address these concerns, in February 2016, Congress amended the statute to eliminate the bonding privilege during new shipper reviews.  *See* Trade Facilitation and Trade Enforcement Act of 2015, Pub. L No. 114-125, § 433, 130 Stat.

---

in part due to "problem[s] in the collection of antidumping duties on imports from new shippers").

[8] Commerce's *bona fide* analysis employed a "totality of [the] circumstances" test to evaluate whether the transactions were "commercially reasonable" or "atypical of normal business practices."  *Hebei New Donghua Amino Acid Co. Ltd. v. United States*, 29 CIT 603, 610, 374 F. Supp. 2d 1333, 1339 (2005) (quoting *Windmill Int'l PTE., Ltd. v. United States*, 26 CIT 221, 229, 193 F. Supp. 2d 1303, 1310-1311(2002)).  Relevant factors included: "(1) the timing of the sale, (2) the price and quantity[,] (3) the expenses arising from the transaction, (4) whether the goods were resold at a profit, (5) and whether the transaction was at an arm's length basis."  *Id.* (citing *Windmill Int'l PTE*, 26 CIT at 227, 193 F. Supp. 2d at 1310; *Am. Silicon Techs. v. United States*, 24 CIT 612, 616, 110 F. Supp. 2d 992, 995. (2000)).

122 (2016).  Additionally, Congress codified Commerce's *bona fide* analysis by adding a new provision to the statute, 19 U.S.C. § 1675(a)(2)(B)(iv).  Trade Facilitation and Trade Enforcement Act, § 433; *see also* H.R. Rep. No. 114-114, pt. 1, at 89 (stating that the new provision regarding *bona fide* sales "reflect[s] . . . Commerce's current regulations and practices in this area").  Currently, provided the new shipper has met the conditions for requesting a new shipper review, the statute requires Commerce to determine any weighted average dumping margin solely on the basis of *bona fide* sales to the United States, and such determination is to be based on the following factors:

> (I) the prices of such sales; (II) whether such sales were made in commercial quantities; (III) the timing of such sales; (IV) the expenses arising from such sales; (V) whether the subject merchandise involved in such sales was resold in the United States at a profit; (VI) whether such sales were made on an arms-length basis; and (VII) any other factor the administering authority determines to be relevant as to whether such sales are, or are not, likely to be typical of those the exporter or producer will make after completion of the review.

19 U.S.C. § 1675(a)(2)(B)(iv) (2016).  Commerce may rescind a review if it concludes that "there has not been an entry and sale to an unaffiliated customer in the United States of subject merchandise" during the period of review, and that "an expansion of the normal period of review to include an entry and sale to an unaffiliated customer in the United States of subject merchandise would be likely to prevent the completion of the review within the [required] time limits."  19 C.F.R. § 351.214(f)(2).

   The issue, as it arises in this case, is whether Commerce properly rescinded the new shipper review based upon its asserted inability to complete the *bona fide* analysis because downstream customers of Jingmei declined to provide certain information requested by the agency.  Pl.'s Br. at 13-22.  Jingmei complains that Commerce's determination is unsupported by substantial evidence because it had enough

information to find Jingmei's sales to be *bona fide* and did not need the information from the downstream customers. Pl.'s Br. at 1, 13; Pl.'s Reply Br. at 3-11. The Government and Arch Chemicals argue that the information Plaintiff provided was insufficient and Plaintiff failed to meet its burden of proof in demonstrating that its sales were *bona fide*. Def.'s Opp'n at 8,13-30; Def.-Int.'s Opp'n at 2, 4-9.

Commerce does not possess subpoena power to require the respondent or any other interested party to respond to information requests. *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1338 (Fed. Cir. 2016) (citing *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)). Rather, Congress gave the agency the authority to use facts available to fill any gaps in the record and, when certain conditions are present, to make an adverse inference in the selection of the available facts (referred to as "adverse facts available" or "AFA"). *See* 19 U.S.C. §§ 1677e(a),(b). In other words, Congress has established a statutory scheme in which it ensured that the agency will have enough information to make its determinations, whether provided by an interested party in response to an information request or otherwise selected by the agency.

Prior actions to rescind new shipper reviews did not result from insufficient information to determine whether the sales were *bona fide*. [9] They resulted from a finding that the initiation requirements were not met or, in many cases, that the sales were not *bona fide*. As a consequence of the latter finding, the agency then determined

---

[9] The court has not located any case in which Commerce rescinded a new shipper review based on insufficient information to conduct the *bona fide* analysis. During the telephone conference, neither Plaintiff's nor Defendant's counsel were able to direct the court to any such cases.

that there were no legitimate sales to review in the new shipper review.[10]  That cannot be said in this case.  While Commerce claims it lacked sufficient information to find the sales to be *bona fide*, it did not use facts available, with or without an adverse inference, to fill any asserted gaps in the record.  I&D Mem. at 9, 13.  In light of this statutory authority to provide gap-filling information on any record when and as justified, the court cannot find that the agency's decision to rescind the new shipper review due to insufficient information is supported by substantial evidence.[11]

During the telephone conference, the Government argued that *Marvin Furniture (Shanghai) Co. Ltd. v. United States*, 36 CIT __, 867 F. Supp. 2d 1302 (2012), *aff'd*, 744 F.3d 1319 (Fed. Cir. 2014), and *Qingdao Maycarrier Imp. & Exp. Co., Ltd. v. United States*, 37 CIT __, 949 F. Supp. 2d 1335 (2013), provide support for Commerce's decision to rescind the review based on insufficient information to conduct the *bona fide* analysis.  *Marvin Furniture* and *Qingdao,* however, are clearly distinguishable.  In those cases, Commerce did not rescind the review due to insufficient information to conduct the *bona fide* analysis; it did not even reach that analysis.  *See Marvin Furniture*, 867 F. Supp. 2d at 1308; *Qingdao*, 949 F. Supp. 2d at 1339, 1341.  Rather, Commerce rescinded the new shipper reviews because the parties did not satisfy the statutory and

---

[10] As this court has noted, "Commerce interprets the term 'sale' in [19 C.F.R.] § 351.214(f)(2)(i) to mean that a transaction it determines not to be a *bona fide* sale is, for purposes of the regulation, not a sale at all."  *Shijiazhuang Goodman Trading Co. v. United States*, 40 CIT __, __, 172 F. Supp. 3d 1363, 1373 (2016).

[11] Jingmei did not expressly challenge Commerce's legal authority to rescind the review without determining that the POR sales were not *bona fide*, and the court does not remand on that basis. However, if, upon remand, the agency continues to rescind the new shipper review without making a finding that the sales are not *bona fide*, the agency must clearly articulate the legal basis for its authority to rescind its review of the sales in question.

regulatory conditions for requesting a new shipper review. *See Marvin Furniture*, 867 F. Supp. 2d at 1308; *Qingdao*, 949 F. Supp. 2d at 1339, 1341; *see also* 19 C.F.R. § 351.214 (outlining rules for requesting new shipper reviews). In contrast, in the instant case, Commerce found that Plaintiff met the requirements for initiating a new shipper review. *Initiation Notice*, 80 Fed. Reg. at 51,774 ("[Commerce] has determined that the request meets the statutory and regulatory requirements for initiation."). Thus, *Marvin Furniture* and *Qingdao* are inapposite.

      Finally, the court notes that in providing Commerce with the authority to use the facts available, including the possibility of an adverse inference, Congress also imposed certain limitations on the agency. For example, 19 U.S.C. § 1677e(a) provides that any use of facts available is subject to § 1677m(d) regarding deficient submissions. Moreover, the use of adverse inferences is subject to certain findings as to whether the party failed to cooperate by not acting to the best of its ability and, in some cases, an obligation to corroborate secondary information selected by the agency. *See* 19 U.S.C. §§ 1677e(b),(c). By avoiding the use of facts available and, instead, rescinding the review based on an asserted lack of information, the agency potentially evades these statutory constraints while creating the effect of applying an adverse inference. By remanding this determination to the agency to determine whether the sales in question were *bona fide*, the court will be in a better position to evaluate whether that redetermination is supported by substantial evidence and otherwise in accordance with law.

The remaining points addressed in Jingmei's brief are deferred pending the agency redetermination. To the extent that Jingmei continues to challenge the redetermination, it should be clear in its briefing which issues it continues to challenge.

## CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's *Final Rescission* is remanded to Commerce so that it may determine whether Plaintiff's sales during the period of review were *bona fide* as discussed in Section III; it is further

**ORDERED** that Commerce shall file its remand redetermination on or before March 5, 2018; and it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule 56.2(h) and the court's Standard Chambers Procedures.

/s/   Mark A. Barnett
Judge

Dated: December 5, 2017
New York, New York