Slip Op. 18-129

## UNITED STATES COURT OF INTERNATIONAL TRADE

HAIXING JINGMEI CHEMICAL
PRODUCTS SALES CO., LTD.,

       Plaintiff,

  v.

UNITED STATES,

       Defendant,

  and

ARCH CHEMICALS, INC.,

       Defendant-Intervenor.

Before: Mark A. Barnett, Judge
Court No. 16-00259

**PUBLIC VERSION**

## OPINION

[Sustaining the U.S. Department of Commerce's Remand Results rescinding the new shipper review of Haixing Jingmei Chemical Products Sales Co., Ltd.]

Dated: September 26, 2018

Gregory S. Menegaz, J. Kevin Horgan, and Alexandra H. Salzman, deKieffer & Horgan, PPLC, of Washington, DC, for Plaintiff.  With them on the brief was Judith L. Holdsworth.

Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Jessica DiPietro, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Peggy A. Clarke, Law Offices of Peggy A. Clarke, of Washington, DC, for Defendant-Intervenor.

Barnett, Judge: This matter is before the court following the U.S. Department of

Commerce's ("Commerce" or the "agency") redetermination upon remand.  *See* Final

Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF No.

50.  Plaintiff, Haixing Jingmei Chemical Products Sales Co. ("Plaintiff" or "Jingmei"),

initiated this action challenging Commerce's final determination to rescind the 2014-

2015 new shipper review of the antidumping duty order on calcium hypochlorite from

the People's Republic of China ("PRC").  *See Calcium Hypochlorite from the People's*

*Republic of China*, 81 Fed. Reg. 83,804 (Dep't Commerce Nov. 22, 2016) (final decision

to rescind the new shipper review of Haixing Jingmei Chemical Products Sales Co.,

Ltd.) ("*Final Rescission*"), ECF No. 18-4, and the accompanying Issues and Decision

Mem., A-570-008 (Nov. 14, 2016) ("I&D Mem."), ECF No. 18-5.[1]  Plaintiff argued that

Commerce's rescission of the new shipper review due to purportedly insufficient

information to conduct a *bona fide* analysis of Plaintiff's sales during the July 25, 2014,

through June 30, 2015 period of review ("POR") was unsupported by substantial

evidence.  *See generally*, Haixing Jingmei Chem. Prods. Sales Co., Ltd Mot. for J. on

---

[1] The administrative record in connection with the *Final Rescission* is divided into a
Public Administrative Record ("PR"), ECF No. 18–3, and a Confidential Administrative
Record ("CR"), ECF No. 18–2.  Parties submitted joint appendices containing record
documents cited in their United States Court of International Trade Rule 56.2
briefs.  *See* Public J.A. ("PJA"), ECF No. 37; Confidential J.A. ("CJA"), ECF No. 36.  The
administrative record associated with the Remand Results is contained in a Public
Remand Record ("PRR"), ECF No. 51-2 at 2, and a Confidential Remand Record
("CRR"), ECF No. 51-2 at 1.  Parties further submitted joint appendices containing
record documents cited in their Remand briefs.  *See* Public J.A. to Remand
Proceedings ("PRJA"), ECF No. 63; Confidential J.A. to Remand Proceedings ("CRJA"),
ECF No. 62. References are to the confidential versions of the relevant record
documents unless stated otherwise.

the Agency R., ECF No. 22, and Confidential Mem. in Supp. of Mot. for J. on the

Agency R., ECF No. 23.

On December 5, 2017, the Court remanded the *Final Rescission*, holding that

Commerce's rescission due to insufficient information to conduct a *bona fide* analysis of

Plaintiff's sales was not supported by substantial evidence in light of the agency's

statutory authority to use facts available, with or without an adverse inference, to fill any

asserted gaps in the record.  *See Haixing Jingmei Chem. Prod. Sales Co., Ltd. v.*

*United States*, 41 CIT ___, 277 F. Supp. 3d 1375, 1382-83 (2017). [2]  The court ordered

Commerce "to determine whether the sales in question were *bona fide*," so that "the

court will be in a better position to evaluate whether that redetermination is supported by

substantial evidence and otherwise in accordance with law."  *Id.* at 1384.

In its Remand Results, Commerce used facts available with an adverse inference

(sometimes referred to as "adverse facts available" or "AFA") to determine whether

Jingmei's sales were indicative of *bona fide* transactions.  *See* Remand Results at 13-

14, 30, 52.  Based on the totality of the circumstances, Commerce concluded that

Jingmei's sales were not *bona fide* and, therefore, rescission of the new shipper review

was appropriate.  *See id.* at 1-2.  Jingmei now challenges Commerce's Remand Results

as unsupported by substantial evidence.  *See* Confidential Pl. Haixing Jingmei Chem.

Prods. Sales Co., Ltd. Comments in Opp'n to U.S. Dep't of Commerce's Remand

Redetermination ("Pl.'s Opp'n Cmts"), ECF No. 52.  The United States ("Defendant" or

"Government") and Defendant-Intervenor, Arch Chems. Inc., support Commerce's

---

[2] The court's opinion in *Haixing Jingmei,* 277 F. Supp. 3d at 1375, presents further
background information on this case, familiarity with which is presumed.

Remand Results.  *See* Confidential Def.'s Resp. to Pl.'s Comments on the Dep't of

Commerce's Remand Results ("Def.'s Supp. Cmts"), ECF No. 60; Confidential Def-Int.

Arch Chems., Inc. Br. in Resp. to Pl.'s Comments on Agency Redetermination Upon

Remand, ECF No. 58 ("Def.-Int.'s Supp. Cmts").  For the following reasons, the court

sustains the Remand Results.

### JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction pursuant to § 516A(a)(2)(B)(iii) of the Tariff Act of 1930,

as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[3] and 28 U.S.C. § 1581(c) (2012).

The court will uphold an agency's determination that is supported by substantial

evidence on the record and otherwise in accordance with law. 19 U.S.C.

§ 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also

reviewed for compliance with the court's remand order."  *SolarWorld Americas, Inc. v.*

*United States*, 41 CIT ___, ___, 273 F. Supp. 3d 1314, 1317 (2017) (quoting X*injiamei*

*Furniture (Zhangzhou) Co. v. United States*, 38 CIT ___, ___, 968 F. Supp. 2d 1255,

1259 (2014) (internal quotation marks omitted).

---

[3] Citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2012 edition.  Citations to 19 U.S.C. §§ 1675 and 1677e, however, are to the 2016 U.S. Code edition, which reflects amendments to § 1675 pursuant to the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114–125, § 433, 130 Stat. 122 (2016), and amendments to § 1677e pursuant to the Trade Preferences Extension Act of 2015, Pub. L. No. 114–27, § 502, 129 Stat. 362, 383–84 (2015).

DISCUSSION

I.     **Legal Framework**

       a.  **New Shipper Reviews**

Pursuant to 19 U.S.C. § 1675(a)(2)(B)(i), when Commerce receives a request from a new exporter or producer who did not export merchandise subject to an antidumping duty order to the United States during the period of investigation, and is not affiliated with any exporter or producer that did export, Commerce must conduct a review to establish an individual weighted-average dumping margin for that exporter or producer.  Commerce must determine any weighted-average dumping margin solely on the basis of *bona fide* sales to the United States during the period of review.  *See* 19 U.S.C. § 1675(a)(2)(B)(iv).  Commerce determines whether the sales are *bona fide* by considering, "depending on the circumstances surrounding such sales," the following factors:

> (I) the prices of such sales; (II) whether such sales were made in commercial quantities; (III) the timing of such sales; (IV) the expenses arising from such sales; (V) whether the subject merchandise involved in such sales was resold in the United States at a profit; (VI) whether such sales were made on an arms-length basis; and (VII) any other factor the administering authority determines to be relevant as to whether such sales are, or are not, likely to be typical of those the exporter or producer will make after completion of the review.

19 U.S.C. § 1675(a)(2)(B)(iv).

In the absence of "an entry and sale to an unaffiliated customer in the United States of subject merchandise," Commerce may rescind the review.  19 C.F.R. § 351.214(f)(2)(i).  A sale that Commerce "determines not to be a *bona fide* sale is, for purposes of [§ 351.214(f)(2)], not a sale at all."  *Shijiazhuang Goodman Trading Co., Ltd. v. United States*, 40 CIT ___, ___, 172 F. Supp. 3d 1363, 1373 (2016).  Thus, if

Commerce excludes all subject sales as non-*bona fide*, it "necessarily must end the review, as no data will remain on the export price side of Commerce's antidumping duty calculation."  *Tianjin Tiancheng Pharm. Co., Ltd. v. United States*, 29 CIT 256, 259, 366 F. Supp. 2d 1246, 1249 (2005).

### b. Facts Available with an Adverse Inference

When "necessary information is not available on the record," or an interested party "withholds information" requested by Commerce," "fails to provide" requested information by the submission deadlines, "significantly impedes a proceeding," or provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i), Commerce "shall . . . use the facts otherwise available."  19 U.S.C. § 1677e(a).[4] Additionally, if Commerce determines that the party "has failed to cooperate by not acting to the best of its ability to comply with a request for information," it "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  *Id.* § 1677e(b).  "Compliance with the 'best of its ability' standard is determined by assessing whether a respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United State*s, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

### II.    Commerce's Individual Findings in the Remand Results

In the Remand Results, Commerce conducted a *bona fide* analysis of the two sales subject to the new shipper review by evaluating the factors enumerated in 19

---

[4] Commerce's authority to use the facts otherwise available is subject to 19 U.S.C. § 1677m(d).  *See* 19 U.S.C. § 1677e(a).

U.S.C. § 1675(a)(2)(B)(iv).[5]  *See* Remand Results at 12-48.  In so doing, the agency

"rel[ied], in part, on adverse inferences with respect to [its] interpretation of the facts

available and thus, some of the weight [it] put on the record evidence [was] affected by

the parties' lack of cooperation and adverse inferences."  *Id.* at 13-14; *see also id.* at 30.

Commerce specifically found that Jingmei, Company X, and Company Y failed to

cooperate by not acting to the best of their ability to comply with Commerce's request

for critical information necessary to determine whether the sales were *bona fide*.  *See*

*id.* at 6-11, 29, 50.

Commerce explained that, at the onset of the review, it issued a standard new

shipper review questionnaire to Plaintiff, requesting information specific to the importer

of the subject merchandise, including the importer's history, organization, ownership,

and affiliations; sales during the POR; other purchases of subject merchandise; and

resale of the merchandise.  *Id.* at 6 & n.31 (citing Initial Questionnaire (Aug. 26, 2015),

CRJA 4, PRJA 4, PR 9-11, ECF No. 62).  The questionnaire directed Plaintiff to answer

the questions, or, if Plaintiff was unable to fully respond, to forward the questionnaire to

Company X and include Company X's answers in Plaintiff's response.  *See id.* at 6-7 &

nn.33-34 (citing Initial Questionnaire, App. IX; Section A Resp. (Sep. 16, 2015) ("Sec. A

Resp.") at 22, CJRA 5, CR 6-8, PJRA 5, PR 14-15, ECF No. 62).  Commerce later

requested the same categories of information from Company Y.  *See id.* at 7-8.  "The

---

[5] The sales involved Haixing Eno Chemical Co., Ltd. ("Eno"), as producer, and Jingmei
as seller.  *See* Remand Results at 2.  Jingmei sold the calcium hypochlorite to [[
                                  ]], a [[              ]] based wholesaler of swimming pool
supplies—denoted here for confidentiality purposes as Company X—who then sold the
merchandise to [[                                          ]], a U.S. customer—denoted here
for confidentiality purposes as Company Y.  *Id.*

purpose of this information [was] to provide Commerce with the facts needed to analyze

the statutory factors of [§1675(a)(2)(B)(iv)]."  *Id.* at 6.

Both Company X and Company Y failed to provide all the requested information,

asserting that the information they withheld was confidential.  *See id.* at 7-8 & nn.38-39

(citing Suppl. Section A Questionnaire Resp. (Dec. 28, 2015) ("Suppl. Sec. A Resp.") at

21, CJRA 11, CR 37-40, PJRA 11, PR 38, ECF No. 62; Customer's Suppl.

Questionnaire Resp. (Dec. 28, 2015) ("U.S. Customer Resp.") at 3, CJRA 12, CR 41,

PJRA 12, PR 39, ECF No. 62).  Commerce cited eight other questionnaires requesting

those and other categories of information that it deemed necessary to conduct its *bona*

*fide* analysis.  *Id.* at 6 n.32 (citations omitted).  "In light of the repeated refusals of

[Company X] and [Company Y] to provide vital requested information, Commerce

advised Jingmei in a supplemental questionnaire that the requested information [was]

necessary for Commerce's analysis[,] and encouraged complete responses to [the

agency's] request for information."  *Id.* at 8 & n.41 (citing Suppl. Section A, C, and

Customer Questionnaire (Mar. 28, 2016) ("Suppl. A, C & Customer Q"), Attach. I, CJRA

15, CR 50, PJRA 15, PR 84, ECF No. 62).  The agency further informed Company X

and Company Y of the need for the information and that their failure to comply with

Commerce's requests may affect the agency's determination as to the *bona fide* nature

of the sales.  *Id.* at 8 & n.42 (citing Suppl. A, C & Customer Q, Attachs. II and III).  To

alleviate their confidentiality concerns, Commerce advised the companies that their

proprietary information would be protected by an administrative protective order.  *Id.* at

8-9 & n.43 (citing Suppl. A, C & Customer Q, Attachs. II and III).  In response, both

Company X and Company Y either "explicitly refused" to provide certain requested

information, or provided "limited responses, limited documentation, or no answers at all"

to other requests for information.  *See id.* at 9-11.

Commerce provided detailed discussion, with citations to the record, of those

refusals and deficiencies.  *See id.* at 9-11 & nn.44-56 (citations omitted).   Commerce

further explained that after receipt of the deficient responses, the agency asked Plaintiff

to describe and document its efforts to ensure full cooperation from Company X and

Company Y.  *See id.* at 11 & n.57 (citing Suppl. Questionnaire Resp. (Apr. 20, 2016)

("April 20 Suppl. Resp.") at 1-2 & Ex. SQ8-1, CJRA 19, CR 60, PJRA 19, PR 94, ECF

No. 62).  Plaintiff responded, stating that it asked for full cooperation from those

companies, "but because these downstream customers are not affiliated with Jingmei,

Jingmei has no control over them and only has a business buyer-seller relationship with

the companies."  *Id.* at 11 & n.58 (quoting April 20 Suppl. Resp. at 1).  Plaintiff produced

e-mail communications with Company X documenting its efforts to encourage it and

Company Y to provide complete responses.   *See* April 20 Suppl. Resp., Ex. SQ8-1.[6]

Under these circumstances, and in light of the fact that Company X was the importer

who purportedly paid the import duties, the agency found that Jingmei, Company X, and

Company Y "failed to provide critical information" requested by the agency that was

necessary to determine whether the sales subject to the new shipper review were *bona*

---

[6] Commerce summarized the email correspondence as follows:
  In this email correspondence, Jingmei requests that [Company X] and
  [Company Y] provide all of the documentation requested by Commerce.
  [Company X] responds to Jingmei stating that they [[
          ]].  Jingmei responds to [Company X] stating that
  it [[
              ]].
*Id.* at 29 & nn.136-138 (citing April 20 Suppl. Resp., Ex. SQ8-1).

*fide*. *See* Remand Results at 6-11, 28-29. Using the available record information and

relying, in part, on adverse inferences, Commerce made the following findings.

### i. *Price and quantity of the sales*

Commerce found that the price and quantity factors of § 1675(a)(2)(B)(iv)(I) and

(II) weighed against a finding that Jingmei's sales were *bona fide*. *See id.* at 16. In

reaching this determination, Commerce relied on facts available because Jingmei and

its customers did not provide "sufficient, objective, verifiable evidence" to demonstrate

that Jingmei's sales were reflective of its usual commercial practices and indicative of

Jingmei's prices and quantities in which it would sell the subject merchandise in the

future. *Id.* at 16. The missing evidence to which Commerce referred included: a list of

companies from which Company X purchased subject merchandise during the POR,

including the date, quantity, and value of each purchase; a list from Company Y of

downstream customers to whom it sold the merchandise subject to the review; and

documentation from Company Y related to any purchases of subject merchandise it

made from Company X subsequent to the purchases covered by the review. *Id.* at 15;

*see also id.* at 36-38 (discussing insufficiency of the information that Company X

provided). Commerce had requested this information from Company X and Company

Y, but neither company supplied it.[7]   *Id.* at 15 & nn.70-71 (citing Sec. A Resp. at 26;

U.S. Customer Resp. at 3).

---

[7] In response to Commerce's request for price information, Company X stated: "it
confirmed that the prices [] from Jingmei were within the normal range of our prices from
other suppliers." *Id.* at 15 (citing Sec. A Resp. at 26). Commerce found this statement
unsubstantiated by record evidence. *Id.* at 16.

The facts available that Commerce considered were Jingmei's reported gross

unit prices, which differed in value, for the two sales.  *Id.* at 15-16 & n.73 (citing Suppl.

Section C Questionnaire Resp. (Dec. 23, 2015) ("Suppl. Sec. C Resp.") at 5, CJRA 10,

CR 30-5, PJRA 10, PR 35-36, ECF No. 62).  Commerce rejected a contention by

Jingmei that its first sale should be understood as a sample sale, explaining that

Jingmei's assertion was contradicted by Jingmei's initial questionnaire response and

otherwise unsupported by record evidence.  *See id.* at 39-40.  Furthermore, Jingmei's

explanation for the price difference provided one basis for Commerce to question

whether the two sales were typical transactions for, or indicative of future sales by,

Jingmei.  *Id.* at 16.[8]  Based on its findings on a failure to cooperate by all three

companies, Commerce used an adverse inference, and concluded that these factors

weighed against a finding that the sales were *bona fide*.  *See id.* at 16 & n.80 (citing,

*inter alia*, 19 U.S.C. § 1677e(b)).

### ii.   Timing

Commerce next analyzed the timing factor of § 1675(a)(2)(B)(iv)(III) and

determined that the timing of payment by Company X to Jingmei for the subject sales

suggested that the sales were not *bona fide*.  *See id.* at 18-19.  Specifically, Commerce

examined the payment terms for both sales and noted that Company X's payments

were 15 and 75 days late, respectively.  *Id.* at 18 & nn.93-96 (citing Jingmei's Corrected

Req. for New Shipper Review (July 20, 2015) ("NSR Req.") at Ex. 2, CJRA 2, CR 2,

PJRA 2, PR 2, ECF No. 62; Suppl. Sec. C Resp. at 4; Sec. A Resp. at Ex. A-7; Suppl.

---

[8] For the first sale, Jingmei "offered a [[                                  ]] for marketing purposes,"
*id.* at 15 & n.74 (citing Suppl. Sec. C Resp. at 5), which indicated to Commerce that "the
second [[                                                ]]," *id.* at 16.

Sec. A Resp. at Ex. SQ1-6).  The record lacked evidence indicating that Jingmei made

an attempt to collect the late payments.  *Id.* at 19.  Commerce explained that although

late payment alone may not indicate that a sale is not *bona fide*, the payment variance

and the lack of collection efforts from Jingmei indicated that the sales were not *bona*

*fide*.  *Id.* at 19; *see also id.* at 40-42.

### iii.  *Expenses Arising from the Sales*

Pursuant to § 751(a)(2)(B)(iv)(IV), Commerce considered the expenses related to

Jingmei's sales, and whether those expenses were consistent with the terms of sale, to

determine whether they conformed to Jingmei's typical sales practice.  *Id.* at 19.

Commerce explained that, to conduct its analysis, it required documentation supporting

the amount and payment of each expense, and documentation linking the expense

payment to both the sale and the paying company's books and records.  *Id.*  Commerce

further explained that, despite multiple requests by the agency, Company X and

Company Y did not provide necessary information in the form and manner requested.

*Id.*  Specifically, Commerce lacked "substantial information and documentation

necessary to substantiate the purported sales terms," and to demonstrate which party

incurred expenses associated with foreign inland freight, brokerage, and handling;

international freight; and import duties, among others.[9]  *Id.*  Accordingly, the agency

---

[9] Another unsubstantiated expense was [[          ]].  *Id.* at 19.  Jingmei asserted that,
pursuant to the terms of sale, Company Y [[
     ]] from a supplier, who then delivered them directly to Eno for packaging the
subject merchandise.  *Id.* at 21 & n.107 (citing Suppl. Sec. A Resp. at 22-23; Suppl.
Section A and C Questionnaire Resp. (Apr. 11, 2016) ("Suppl. Sec A&C Resp.") at 11,
CJA 18, CR 54-59, PJA 18, PR 92, ECF No. 36-1).  Commerce requested Company Y
to provide purchase orders and commercial invoices demonstrating the purchase of the
[[                    ]], accounting records demonstrating where these purchases were
recorded in Company Y's accounting system, and images of the [[                ]],

used facts available, with an adverse inference, to determine whether the sales-related expenses were indicative of *bona fide* transactions.  *Id.* at 19-20.  Commerce concluded that this factor weighed against a finding that the sales are *bona fide*.  *Id.* at 24. Commerce provided detailed analysis of each expense, as follows.

Regarding foreign inland freight, brokerage, and handling expenses, Company X had submitted limited invoices for these expenses, and failed to provide "financial ledgers showing the booked payment for these expenses."  *Id.* at 20 & n.103 (citing Suppl. Sec. A&C Resp. at 9 & Ex. SQ7-7).[10]  Furthermore, Commerce found that Jingmei's reporting of the sales terms was inconsistent with what was provided in the PRC's customs declaration documents.  *See id.* at 20, 24.[11]  Commerce further found that Jingmei's explanation for the inconsistencies, which suggested that Jingmei had no other option but to report the sale term inconsistently in the PRC's customs declaration

including "clear images of the labels affixed to each."  *Id.* at 21 & n.108 (citing Suppl. Sec A&C Resp. at 11).  Company Y did not provide a purchase order for the [[     ]] related to the first sale, accounting records as requested by Commerce, or commercial invoices.  *See id.* at 22 & n.110 (citing Suppl. Sec A&C Resp. at 11). Company Y provided an image of a [[                    ]], which showed the contents to be [[                         ]], whereas the product purportedly sold in the [[          ]] was reported to Commerce as [[                              ]].  *Id.* at 22 & n.109 (citing, *inter ali*a, Suppl. Sec A&C Resp. at Ex. SQ7-11 (photograph of the packaging)); *see also id.* at 43.  Commerce found it unusual that Company Y provided selective information in response to Commerce's requests, and further determined that the lack of financial ledgers to demonstrate payment for the expenses impeded the agency's ability to substantiate them.  *Id.* at 22.

[10] Company X submitted [[     ]] of [[     ]] requested invoices.  *Id.* at 20.  The [[     ]] it provided simply showed that Company X was invoiced for foreign movement services by another company for one of the subject sales.  *Id.* at 20 & n.103 (citing Suppl. Sec A&C Resp. at 9, Ex. SQ7-7).

[11] In its questionnaire response, Jingmei reported that the sales to Company X were [[     ]]; in the PRC customs declaration documents, Jingmei reported the sales terms were [[     ]].  *Id.* at 20 & n.101 (citing Suppl. Sec. A Resp. at 3-4); *id.* at 24 & n.118 (citing Suppl. Sec. C Resp. at 8, Ex. SQ3-7).

documents, was unsupported by record evidence.  *See id.* at 24 & n.119 (citing Suppl.

Sec. C Resp. at 8 & Ex. SQ3-7).  Therefore, Commerce found that the parties' claims

with respect to the sales terms and which party incurred certain expenses were

unverifiable and unreliable.  *Id.* at 24.

      With respect to international freight, Company X had reported to Commerce that

Company Y was responsible for this expense for both sales.  *Id.* at 20 & n.104 (citing

Suppl. Sec. A Resp. at 22).[12]  Commerce instructed Company Y to "provide a narrative

description of all freight expenses paid," and to provide supporting accounting

documentation showing that payment of these expenses was recorded in Company Y's

accounting system.  *Id.* at 21 & n.105 (citing Suppl. Sec. A&C Resp. at 12).  In

response, Company Y stated that it "paid the ocean freight" for one of the sales, and

submitted an ocean freight invoice, which, Commerce found, lacked sufficient

information to establish that the invoice was associated with the merchandise subject to

the review.  *Id.* at 21 & n.106 (citing Suppl. Sec. A&C Resp. at 12 & Ex. SQ7-12).

Specifically, although the invoice contained a bill of lading number that matched the

ocean bill of lading and the U.S. Customs and Border Protection ("CBP") Form Entry

Summary, the weight of the merchandise as listed in those documents did not

correspond to the weight listed in Jingmei's commercial invoice for this sale.  *Id.* at 42 &

n.208 (citing NSR Req., Ex. 2).  Moreover, Commerce was unable to substantiate the

---

[12] Company X reported that it sold to Company Y on [[         ]], and that
Company Y was responsible for [[    ]] associated with the first sale, and [[
        ]] for the second sale.  *Id.* at 20 & n.104 (citing Suppl. Sec. A
Resp. at 22).

payment for international freight expenses because Company Y "did not provide

financial ledgers showing the booked payment for these expenses." *Id.* at 21.

With respect to import duties, Company X had purportedly paid those expenses

for both sales. *Id.* at 22 & n.111 (citing Suppl. Sec. A&C Resp. at 9).   Commerce

instructed Company X to submit documentation demonstrating payment of import

duties, including broker invoices, accounting vouchers, and expense ledgers. *Id.* at 22

& n.112 (citing Suppl. Sec. A&C Resp. at 9).   The information that Company X

provided—namely, broker invoices and what Commerce deemed insufficient payment

documentation—merely showed that "[Company X] was invoiced for import duties." *Id.*

at 23.   The payment documentation was insufficient because it comprised of "two partial

screenshots from a banking website" that "[did] not identify the remitter and [did] not

appear to be a final transaction confirmation." *Id.* at 22-23 & n.113 (citing Suppl. Sec.

A&C Resp., Ex. SQ7-8); *see also id.* at 44.   Because Commerce was missing financial

ledgers showing the payment of the import duties, it could not substantiate payment of

this expense. *Id.* at 23.   Furthermore, Commerce found it unusual that "Company X's

purported payments of import duties alone [were] significantly greater than the total

value of the sales." *Id.* at 23; *see also id.* at 24 & nn.116-117 (citing Sec. A Resp., Ex.

7; Suppl. Sec. A Resp., Ex. SQ-6; Suppl. Sec. A&C Resp., Ex. SQ7-8).[13]

---

[13] For the first sale, Company X paid Jingmei [[                    ]] and purportedly paid
[[            ]] in import duties, and received payment in the amount of [[         ]] from
Company Y.   *Id.* at 23-24 & nn.116-117 (citing Sec. A Resp., Ex. 7; Suppl. Sec. A
Resp., Ex. SQ1-6; Suppl. Sec. A&C Resp., Ex. SQ7-8).   For the second sale, Company
X paid Jingmei [[            ]] and purportedly paid [[             ]] in import duties, while
it only received [[                 ]] from Company Y.   *Id.* at 24 & n.117 (citing same).

### iv.  Whether the Merchandise was Resold at a Profit

The agency explained that when conducting new shipper reviews, it "requires parties to provide detailed information on the importer's purchases and ongoing commercial operations to analyze whether the subject merchandise was resold at a profit."  *Id.* at 25 & n.120 (citing *Foshan Nanhai Jiujiang Quan Li Spring Hardware Factory v. United States*, 37 CIT ___, ___, 920 F. Supp. 2d 1350, 1359-60 (2013)). Because the record also lacked sufficient documentation supporting the sales-related expenses, which would affect the profit analysis, Commerce considered facts available with an adverse inference.  *See id.* at 25.  With respect to Company Y's disposition of the merchandise in the United States, Commerce had requested documentation demonstrating resale of the subject merchandise, but Company Y provided only two sample resale invoices and payment documentation associated with those invoices. *See id.* at 26 & n.122 (citing Suppl. Sec. A&C Resp. at 12 & Ex. SQ7-13).  Commerce thus determined that the record lacked "objective evidence to substantiate whether the subject merchandise was resold in the United States at a profit," which weighed against a finding that the sales were *bona fide*.  *Id.* at 26;[14] *see also id.* at 44-45.

### v.  Whether the Sales Were Made on an Arms-Length Basis

In conducting its analysis pursuant to § 1675(a)(2)(B)(iv)(VI), Commerce stated that it considered the relationship between Jingmei, Company X, and Company Y; evidence of price negotiations; the terms of sale, and other circumstances surrounding

---

[14] Commerce noted that Company Y's "failure to provide all resale invoices for at least the [[                              ]] is not a consequence of that merchandise remaining in inventory, [because Company Y] had stated that such merchandise was sold out."  *Id.* at 26 & n.123 (citing Suppl. Sec. A&C Resp. at 11-12).

the sales.  *See id.* at 26.  Commerce found that there was a lack of necessary

information on the record to substantiate the parties' claims that they are unaffiliated,

indicating that "Jingmei has not demonstrated that the sales were made at arm's

length."  *Id.*

> ### vi.  *Additional Factors*

In addition to the foregoing, Commerce cited additional factors—the discrepancy

in packaging labels, gross weight discrepancies in shipping documents, and the

deficient questionnaire responses notwithstanding the potential financial incentive for

establishing the *bona fide* nature of the sales—as suggestive that the sales were not

*bona fide*.  *See id.* at 27-29; *see also id.* at 45-48.

## III.   **Commerce's Remand Results Are Sustained**

The court ordered Commerce, on remand, "to determine whether the sales in

question were *bona fide*," so that "the court will be in a better position to evaluate

whether that redetermination is supported by substantial evidence and otherwise in

accordance with law."  *Haixing Jingmei,* 277 F. Supp. 3d at 1384.  On remand,

Commerce conducted its *bona fide* analysis by evaluating the statutory factors pursuant

to 19 U.S.C. § 1675(a)(2)(B)(iv), and has therefore complied with the court's remand

order.  As noted, Commerce applied, in part, an adverse inference in filling gaps in the

record.  Plaintiff now challenges the legality of Commerce's action and the supportability

of the agency's individual findings.

Overall, the court has little difficulty finding that substantial evidence supports

Commerce's use of adverse inferences in evaluating certain record evidence  and

concluding that the sales in question were not *bona fide*.  With respect to the statutory

criteria, the record did not contain complete information in response to the agency's

request for documentation supporting an affirmative *bona fide* sale conclusion.  Most

notably, while there are various, sometimes inconsistent claims as to which party paid

certain expenses, there is no proof of payment by any party for many of those

expenses.  Proper allocation of the expenses is critical for the agency to determine the

profitability of the resale, the likelihood of the transaction being representative of future

transactions, and if the review had gone forward, the correct calculation of the dumping

margin.  As discussed further below, Jingmei's inability to secure and provide this

information, whether directly or indirectly, and failure to demonstrate any effort to obtain

this necessary information beyond a single email communication to one of the two

downstream customers adequately supports Commerce's decision to use adverse

inferences when filling the gaps in the record.

Plaintiff asserts that, in applying an adverse inference, Commerce "create[d] a

fiction that Jingmei is somehow related to its customers," and violated 19 U.S.C.

§ 1677e(b) by attributing the failure of Company X and Company Y to Jingmei, rather

than finding that Jingmei itself failed to cooperate by not acting to the best of its ability to

comply with Commerce's requests for information.  Pl.'s Opp'n Cmts at 2-3.  According

to Plaintiff, the record does not support the existence of an affiliation between Jingmei

and its downstream customers to warrant the application of adverse inferences against

Jingmei based on its customers' conduct.  *See id.* at 3-10, 13.  Plaintiff advocates that

the agency "cannot punish [a] cooperating part[y]," such as Jingmei, who documented

its efforts to urge full cooperation from its customer and downstream customers, but

lacked any control over them to secure full compliance.  *See id.* at 11-12 (citing *Shantou*

*Red Garden Foodstuff Co. v. United States*, 36 CIT ___, ___, 815 F. Supp. 2d 1311,

1323 (2012); *SKF USA Inc. v. United States*, 33 CIT 1866, 1875-1877, 675 F. Supp. 2d

1264, 1274-1275 (2009)).

        Throughout these arguments, Jingmei mischaracterizes Commerce's adverse

facts available determination as premised on a finding of affiliation between Jingmei,

Company X, and Company Y.  To the contrary, Commerce explained, on multiple

occasions, that it based its non-*bona fide* sales determination on a finding that Jingmei,

its customer, and the downstream customer failed to cooperate to the best of their

abilities, including by failing to establish that the transactions in question occurred at

arm's length.  *See* Remand Results at 6-11, 13, 29, 50.  Record evidence upon which

Commerce relied supports the agency's finding.  *See supra* pp. 7-9; *see also* Remand

Results at 7-11.  When confronted with multiple deficient responses, Commerce

communicated to each company the agency's need for the requested information and

the availability of an administrative protective order by which the companies could

maintain the confidentiality of any business proprietary information; it also warned that

the companies' failure to provide the information may adversely affect the new shipper

review.  *See* Suppl. A, C & Customer Q, Attach. I at 6; *id.*, Attach. II at 7; *id.*, Attach. III

at 9.  At the same time, Commerce instructed Jingmei to "ensure that the intended

parties provide the requested information. . . . If we do not receive complete responses

to our requests for information or we determine that your efforts to obtain the

information was not sufficient we may use adverse facts available."   Suppl. A, C &

Customer Q, Attach. I at 6.  Nevertheless, Company X and Company Y provided

incomplete information—including limited invoices, purchase orders, sales listings,

accounting vouchers, and expense ledgers—and expressly refused to provide other documentation.  *See* Remand Results at 9-11 & nn.44-56 (discussing Suppl. Sec. A&C Resp. at 8-9, 11-13 & Exs. SQ7-6, SQ7-7, SQ7-8, SQ7-11, SQ7-13, SQ7-14).  "To the extent that information responsive to Commerce's request was business proprietary, [these companies] could have supplied a public summary or included it as confidential business proprietary information."  *Shanghai Sunbeauty Trading Co., Ltd. v. United States*, 42 CIT __, Slip Op. 18-111 at 30 (Sept. 6, 2018) (citing 19 C.F.R. § 351.304(c)(1)).

Although Plaintiff attempted to persuade the agency that it undertook efforts to ensure full cooperation from its customer and the downstream customer, its efforts were not enough.  *See* Remand Results at 29.  Plaintiff's e-mail communication showed that Jingmei contacted Company X to request cooperation from both Company X and its downstream customer, Company X explained its reasons for declining to do so, and Jingmei did not inquire further. *See* April 20 Suppl. Resp., Ex. SQ8-1.[15]  Jingmei's efforts here do not constitute the "maximum effort" that the "best of its ability" standard requires.  *See Nippon Steel*, 337 F.3d at 1382.  In light of Commerce's warning to all parties that failure to provide requested information may affect Commerce's determination as to the *bona fide* nature of the sales subject to this review, and the lack of further efforts on Jingmei's part to secure full cooperation, Commerce reasonably concluded that Jingmei, in addition to Company X and Company Y, failed to act to the best of its ability.

---

[15] Instead of undertaking further efforts to ensure cooperation, Jingmei responded to Company X that it [[

            ]].  *See* April 20 Suppl. Resp., Ex. SQ8-1.

Plaintiff's reliance on *Shantou Red Garden*, 815 F. Supp. 2d at 1323, and *SKF USA Inc.*, 33 CIT at 1875-1877, 675 F. Supp. 2d at 1274-1275, to challenge the agency's reasonable determination is misplaced.  *See* Pl.'s Opp'n Cmts at 11-12.  In *Shantou*, Commerce used an adverse inference based on a finding that the respondent failed to act to the best of its ability to comply with an information request, which the court determined was never communicated to the respondent.  *See* 815 F. Supp. 2d at 1316-1319.  Therefore, the respondent's failure to take actions that the agency never requested did not support a finding of a lack of cooperation pursuant to § 1677e(b).  *See id.* at 1319.  Unlike in *Shantou*, Commerce communicated its requests to Jingmei and made the affirmative finding that Jingmei failed to cooperate to the best of its ability to comply with those requests.  *SKF USA Inc.* is likewise distinguishable.  In *SKF USA Inc.*, Commerce used an unaffiliated supplier's failure to cooperate to affect adversely the dumping margin of a respondent "about whom Commerce did not make a finding of non-cooperation."  *Id.* at 1878 (emphasis omitted); *see also id.* 1876-78.  Commerce specifically selected a rate that was, and was intended to be, adverse to that respondent.  *See id.* at 1877.  In contrast to *SKF USA Inc.*, here, Commerce found that Jingmei itself failed to cooperate to the best of its ability.  *See, e.g.*, Remand Results at 51.  Commerce applied the adverse inference in weighing the available evidence concerning the price, quantity, and expenses of the sales and in determining whether the sales were resold at a profit.  *See* Remand Results at 13-14, 16 & n.80, 19-20, 25.

Subsequent to *SKF USA Inc.*, the U.S. Court of Appeals for the Federal Circuit held that Commerce is not barred, under appropriate circumstances, "from drawing adverse inferences against a non-cooperating party that have collateral consequences

for a cooperating party." *Mueller Comercial de Mexico, S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1236 (Fed. Cir. 2014).  Therein, the court held that Commerce may rely on inducement or deterrence considerations in determining a weighted-average dumping margin for a cooperating party "as long as the application of those policies is reasonable on the particular facts and the predominant interest in accuracy is properly taken into account."  *Id.* at 1233.  There were no cooperating parties in this case and Commerce did not articulate that it was relying on an inducement rationale to reach its AFA determination.  As stated above, however, Commerce noted Company X's status as the importer purportedly responsible for paying the import duties, Jingmei's lack of further efforts to induce cooperation from Company X and Company Y, and the agency's need for accurate information in making its *bona fide* determinations. *See* Remand Results at 3, 22-24, 29, 44.  Thus, Commerce was guided by some of the principles articulated in *Mueller*, and that case further undermines Plaintiff's argument that Commerce was not permitted to rely on adverse inferences in interpreting the available information on the record.

Furthermore, the present case concerns a new shipper review, and the relevant statute requires Commerce to examine the companies on both sides of the transaction to ensure that the sales in question are *bona fide*.  The statutory requirement that the U.S. sales must be *bona fide* was a response to concerns about the reported abuse of a previous provision in the statute permitting an importer to post a bond, in lieu of cash deposits, to serve as security for the future payment of antidumping duties until the completion of the new shipper review.  *Haixing Jingmei*, 277 F. Supp. 3d at 1381-82 & n.7.  Thus, the law's requirement that Commerce conduct the *bona fide* analysis is

intended to ensure that companies are legitimate business entities, and on the importer

end, not simply chosen to "enter into a scheme to structure a few sales to show little or

no dumping," only to disappear or become nonresponsive after conclusion of the

review.  *Id.* at 1381 n.7; *See also* 19 U.S.C. § 1675(a)(2)(B)(iv)(V) (directing Commerce

to inquire whether the subject merchandise involved in the new shipper review sales

was resold in the United States at a profit).  To that end, Commerce reasonably

requested information from Company X and Company Y to complete its *bona fide*

analysis.

Plaintiff next contends that Commerce unjustifiably requested accounting records

from Company X and Company Y, *see* Pl.'s Opp'n Cmts at 14, and that the record

contained "an extraordinary amount of information" that was sufficient to enable the

agency to determine whether Jingmei's sales were *bona fide*, *id.* at 16.  Commerce

properly explained, however, that "each *bona fide* analysis is dependent on the facts

specific to each case."  Remand Results at 48; *see also* 19 U.S.C. § 1675(a)(2)(B)(iv)

(stating that Commerce, in its *bona fide* analysis, "shall consider, depending on the

circumstances surrounding such sales," the statutory factors).  Thus, "Commerce

designs its questionnaires to elicit information that it has determined it requires to

perform its *bona fides* analysis, and [interested parties have] the burden to respond with

the requested information to create an adequate record."  *Shanghai Sunbeauty Trading*

*Co.*, 42 CIT __, Slip Op. 18-111 at 30 (citing *Nan Ya Plastics Corp., Ltd. v. United*

*States*, 810 F.3d 1333, 1337-38 (Fed. Cir. 2016)).  Under the particular facts of this

case, Commerce deemed it necessary to request accounting documentation to either

obtain information missing from the record or substantiate the purported terms of sales,

the expenses incurred, and confirm payment of those expenses by a particular party.

*See* Remand Results at 46-47 (discussing the "unusual circumstances" of Jingmei's

sales, the need for accounting records to obtain the price and quantity of the sales

because of Jingmei's insufficient reporting, and to substantiate the payment of

expenses related to the sales); *see also id.* at 14-16, 19-24, 37-38.[16]

---

[16] Plaintiff takes issue with the authority upon which Commerce relied for the proposition that the agency sometimes requests supporting accounting documentation from the respondent's customers or downstream customers when conducting the *bona fide* analysis in a new shipper review. *See* Pl.'s Opp'n Cmts at 17; *see also* Remand Results at 48 & n.225 (citing to *Zhengzhou Huachao Indus. Co., Ltd. v. United States*, Slip Op. 13-61, 2013 WL 3215181 (CIT May 14, 2013)). Plaintiff seems to suggest that Commerce's reliance on *Zhengzhou* is misplaced because the present case does not contain the identical set of facts as existed in *Zhengzhou*. *See* Pl.'s Opp'n Cmts at 14, 17-19 (distinguishing *Zhengzhou* based on the court's assessment of the questionnaire response deficiencies in that case). Plaintiff also points to the agency's final determination in which the agency cited two past new shipper reviews for that proposition. *See* Pl.'s Opp'n Cmts at 18; I&D Mem. at 8 (citing *Certain Warmwater Shrimp From the People's Republic of China*, 72 Fed. Reg. 52,049 (Dep't Commerce Sept. 12, 2007) (notice of final results and rescission, in part, of 2004/2006 antidumping duty admin. and new shipper reviews) ("*Shrimp NSR*"), and accompanying Issues and Decision Mem., A-570-893 (Sept. 5, 2007); *Honey From the People's Republic of China,* 72 Fed. Reg. 37,715 (Dep't Commerce July 11, 2007) (final results and final rescission, in part, of antidumping duty admin. review) ("*Honey NSR*"), and accompanying Issues and Decision Mem., A-570-863 (July 2, 2007)). Before the court, as it did before the agency on remand, Plaintiff attempts to distinguish *Honey NSR* and *Shrimp NSR* on their facts and avers that neither administrative decision gives any indication that the agency requested accounting documentation from importers or downstream customers. *See* Pl.'s Opp'n Cmts at 19-20; Remand Results at 34 n.167, 48 (responding to Plaintiff's draft comments). Plaintiff overlooks that Commerce cited *Zhengzhou* and discussed *Shrimp NSR* and *Honey NSR* for the general proposition that Commerce "has authority to conduct a full examination of companies on both sides of the transaction in a *bona fide* sales analysis." Remand Results at 48; *see also Zhengzhou*, 2013 WL 3215181, at *21-22; *Shrimp NSR* at Comment 16 ("[T]he [agency] examines the companies on both sides of the transaction"); *cf. Honey NSR* at Comment 4 ("[I]t remains evident to the [agency] that in the instant review, *the importer of record* provided full responses to the [agency's] questions in both [initial and supplemental] questionnaires") (emphasis added). Here, not only was such information relevant to determining the profitability of the resale, but it was also critical to documenting which party paid which expense and in what amount. Because Jingmei made these sales pursuant to terms allegedly requiring other parties to pay certain significant expenses

Plaintiff's argument that the agency had sufficient information to determine whether Jingmei's sales were *bona fide* is belied by the record itself and the agency's well-reasoned explanation of the deficiencies in the same exhibits that Plaintiff cites to support its argument.  *See* Pl.'s Opp'n Cmts at 16-17.  For example, Plaintiff points to Company X's brokerage and handling invoices, Suppl. Sec. A&C Resp., Ex. SQ7-7; Company X's payment documentation of import duties, Suppl. Sec. A&C Resp., Ex. SQ7-8; Company Y's resale invoices, Suppl. Sec. A&C Resp., Ex. SQ7-13; Company Y's summary containing country of origin, purchase quantity, and purchase price of its purchases of subject merchandise during the POR, Suppl. Sec. A&C Resp., Ex. SQ7-14; and Company Y's photographs of the packaging material, Suppl. Sec. A&C Resp., Ex. SQ7-11.  *See id.*  With respect to the cited evidence, Commerce reasonably found that: Company X did not provide all of the requested invoices and payment for the purported expenses was unsubstantiated due to lack of financial ledgers, *see* Remand Results at 10 & n.49, 20 & n.103; Company X's documentation regarding payment of import duties was insufficient, *see id.* at 22-23 & n.113; Company Y's sample resale invoices did not account for the resale of all the merchandise under review, *see id.* at 26 & nn.122-123, 44-45 & n.214; and Company Y's summary of the origin, quality, and price of its purchases of subject merchandise was incomplete in that it omitted the invoice date, invoice number, supplier name and address, and terms of sale, *see id.* at 10-11 & n.55.  Commerce also reasonably questioned whether the photographs of the

---

associated with the sales, it was critical for Jingmei to be able to document the payment of those expenses by the other parties.

packaging material depicted the subject merchandise.  *See id.* at 43 & n.210; *supra* note 9.

Plaintiff's remaining arguments challenge Commerce's individual findings with respect to the price and quantity of the sales, timing of payment, and expenses and profit.  *See* Pl.'s Opp'n Cmts at 20-30.  With respect to timing, Plaintiff objects to Commerce's finding that the delay in Company X's payment and the lack of collection effort by Jingmei suggested a departure from normal commercial practice.  *Id.* at 26.  Relying on *Huzhou Muyun Wood Co. v. United States*, 41 CIT ___, ___, 279 F. Supp. 3d 1215, 1231 (2017), Plaintiff suggests that Company X's late payments by 15 and 75 days for the first and second sale, respectively, amounted to short delays, which are not atypical in international business.  *Id.* at 26.  Plaintiff, however, makes no arguments, and fails to point to any evidence, suggesting that receiving late payments was normal business practice for Jingmei.  In *Huzhou Muyun Wood*, "the invoice did not specify a due date and the payment was allegedly only nine days late."  279 F. Supp. 3d at 1231.  The court also noted that case law suggests "that Commerce must look at the degree of lateness associated with payments and the extent to which other factors suggest the sale was atypical."  *Id.* at 1231-32 (citing *Tianjin*, 29 CIT at 271-72, 366 F. Supp. 2d at 1260-61).  Here, Commerce examined the payment terms, the variance in late payments, and the lack of collection efforts on Jingmei's part, and reasonably concluded that the combination of these factors indicated that the sales were not *bona fide*.  *See* Remand Results at 18-19, 40-42.

Plaintiff's other arguments largely amount to mere disagreement with Commerce's weighing of the evidence.  *See* Pl.'s Opp'n Cmts at 20-21, 23-30.  That

approach mistakes the function of the court, which is to determine whether the Remand

Results are supported by substantial evidence, *see* 19 U.S.C. § 1516a(b)(1)(B)(i), not to

"reweigh the evidence or . . . reconsider questions of fact anew." *Downhole Pipe &*

*Equip., L.P. v. United States*, 776 F.3d 1369, 1377 (Fed. Cir. 2015) (internal quotation

marks and citation omitted).  That there is a possibility of drawing two inconsistent

conclusions from the evidence does not preclude the agency's finding from being

supported by substantial evidence.  *Matsushita Elec. Indus. Co. v. United States,* 750

F.2d 927, 933 (Fed. Cir. 1984) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607,

619–20 (1966)).  The record evidence upon which Commerce relied supports

Commerce's findings with respect to price and quantity of the sales, timing of payment,

and expenses and profit.  *See supra* Discussion Section II.i-II.iv; *see also* Remand

Results at 14-26.  Moreover, the record as a whole supports the agency's conclusion

that the totality of circumstances indicates that Jingemi's sales were not *bona fide*.

Lastly, Plaintiff suggests Commerce failed to address evidence not on the record.

With respect to price and quantity, Plaintiff argues that, in recent practice, Commerce

has not considered customers' and downstream customers' accounting books and

records to determine whether the price of the subject sale is indicative of the new

shipper's future behavior.  Pl.'s Opp'n Cmts at 22.  Plaintiff notes that in a recent new

shipper review concerning the antidumping duty order on multilayered wood flooring

from the PRC, Commerce compared the prices of the new shipper with the prices of

most similar merchandise sold by mandatory respondents in the most recently

completed administrative review.  *Id.* at 22-23 (citing *Multilayered Wood Flooring From*

*the People's Republic of China*, 82 Fed. Reg. 25,773 (Dep't Commerce June 5, 2017)

(final results and partial rescission of antidumping duty new shipper review; 2014-2015), and accompanying Issues and Decision Mem., A-570-970 (June 5, 2017) at Comment 4).  Plaintiff also notes that Commerce has in the past compared prices to CBP data when analyzing the commercial reasonableness of the new shipper's sales.  *Id.* at 23. Plaintiff, however, does not cite to any such evidence in the record of this new shipper review that Commerce neglected to consider.  Based on this record, the court cannot conclude that the agency erred in failing to consider data or information that did not exist.

### CONCLUSION

For the foregoing reasons, the court finds that substantial evidence supports Commerce's finding that Jingmei's sales are not *bona fide*, and, therefore, rescission of the new shipper review was appropriate.  Judgment will enter accordingly.

/s/      Mark A. Barnett
Judge

Dated: <u>September 26, 2018</u>
      New York, New York